UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM E. MITCHELTREE, Sr.,

    *Plaintiff*,

v.                                  CASE NO. 2:13–CV–13577-PDB–PTM

COMMISSIONER OF              DISTRICT JUDGE PAUL D. BORMAN
SOCIAL SECURITY,               MAGISTRATE JUDGE PATRICIA T. MORRIS

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

### II.    REPORT

#### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://www.uscourts.gov/RulesAndPolicies/JudiciaryPrivacyPolicy/March2008 RevisedPolicy.aspx. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Commissioner's decision denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). This matter is currently before the Court on cross-motions for summary judgment. (Docs. 16, 19.)

Plaintiff William Mitcheltree was 47 years old at the time of the most recent administrative hearing. (Transcript, Doc. 13 at 30.) Plaintiff worked as a machine operator for the steel industry for 17 years and on the production line for the automotive industry for 8 years. (Tr. at 113.) Plaintiff filed the present claim on March 7, 2011, alleging that he became unable to work on December 3, 2008. (Tr. at 89.) The claim was denied at the initial administrative stages. (Tr. at 58.) In denying Plaintiff's claims, the Commissioner considered disorders of back, discogenic and degenerative as a possible basis for disability. (*Id.*) On February 9, 2012, Plaintiff appeared before Administrative Law Judge ("ALJ") Timothy C. Scallen, who considered the application for benefits *de novo*. (Tr. at 13-26, 27-50.) In a decision dated June 29, 2012, the ALJ found that Plaintiff was not disabled. (Tr. at 23.) On July 16, 2012, Plaintiff requested a review of this decision. (Tr. at 10-12.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on July 9, 2013, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-5.) On August 20, 2013, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

### B. Standard of Review

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990), *superseded by statute on other grounds*, Personal Responsibility and Work Opportunity

Reconciliation Act of 1996, Pub. L. No. 104-193, 110 Stat. 2105. The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the Social Security Agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "'must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.'" *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (*quoting Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (noting that the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (quoting *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ

finds contradictions among medical reports, claimant's testimony, and other evidence.")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) ("[A]n ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "'there exists in the record substantial evidence to support a different conclusion.'" *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record before the ALJ only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a '"zone of choice"' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (quoting *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir.

4

1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("'[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'" (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

### C. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. § 401 *et seq.*, and the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. § 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work . . . ." *Jones*, 336 F.3d at 474, *cited with approval in Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and

6

considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff me the insured status requirements through June 30, 2011, and had not engaged in substantial gainful activity during the period from his alleged onset date of December 3, 2008, through his date last insured of June 30, 2011. (Tr. at 18.) At step two, the ALJ found that Plaintiff's lumbar radiculopathy status post right-sided L4-5 hemilaminotomy with partial discectomy, lumbar post-laminectomy syndrome, and degenerative joint disease of the lumbar and thoracic spine with herniated nucleus pulposus at T11-12 and L5-S1 were "severe" within the meaning of 20 C.F.R. § 404.1520. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 18-19.) At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (Tr. at 22.) The ALJ also found that Plaintiff was 47 years old on the date last insured, which is a younger individual age 45-49 under 20 C.F.R. § 416.1563. (Tr. at 22.) At step five, the ALJ found that Plaintiff could perform a limited range of sedentary work. (Tr. at 19-22.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 23.)

### E. Administrative Record

The relevant medical evidence contained in the administrative record indicates that Plaintiff stopped working in 2009 when he was laid off of work at American Axle. (Tr. at 40.) The only income he reported in 2010 was from unemployment compensation. (Tr. at 41.)

Plaintiff has suffered from back pain since 2007. An MRI of the lumbar spine taken on August 13, 2008, showed "a large right paramedian disc herniation at L4-L5 causing mass effect on the thecal sac and the right L5 nerve root in the lateral recess" and "[s]mall annulus tear and disc herniaton eccentric to left at L5-S1 without significant interval change." (Tr. at 225.)

Plaintiff underwent a right-sided hemilaminotomy with partial discectomy on December 3, 2008. (Tr. at 154-55, 214-15.)

An MRI of the lumbar spine taken on May 27, 2009, showed "[m]ild to moderate degenerative changes greatest at L4-L5 and L5-S1[,]" "[a]nnulus tear and small to moderate disc herniation eccentric to right at L4-L5" and "[a]nnulus tear and small disc herniation slightly eccentric to left at L5-S1" but "no significant spinal stenosis." (Tr. at 170, 224.)

Plaintiff was treated by Martin Kornblum, M.D. from 2007-2009. (Tr. at 157, 185-88, 216-23.) On September 8, 2009, Dr. Kornblum indicated that "fusion will be the next step for him" if Plaintiff wanted any treatment beyond prescription medication and epidural injections. (Tr. at 157.) Plaintiff did receive epidural steroid injections on several occasions. (Tr. at 185, 186, 187, 188, 227, 230, 233.)

On January 7, 2011, an MRI of Plaintiff's lumbar spine showed "[m]ild to moderate degenerative changes in the mid and lower lumbar spine and visualized lower thoracic spine[,]" "[p]ostoperative changes at L4-L5[,]" "[s]mall to moderate disc herniation eccentric to left at L5-S1 mildly effaces ventral aspect of Left S1[,]" "[s]mall disc herniation eccentric to right at T11-T12" but "no significant spinal stenosis" and "no enhancing intradural abnormality." (Tr. at 173, 205.)

8

Plaintiff was treated by Jason Peter, D.O.. (Tr. at 181-83, 189-204.) As an example of the type of treatment given, Dr. Peter's physical examination on January 27, 2011, consisted, in total, of notations that Plaintiff

> is alert and oriented times three. Abdomen is soft. Extremities: No edema. He is able to get from a seating to a standing position. Straight leg raise is equivocal on the right. Reflexes are unchanged. There are no significant motor deficits in the legs.

(Tr. at 181.) Dr. Peter recommended continuation of prescription medications and seeking approvals for a spinal cord stimulator. (*Id.*)

On June 21, 2011, Dr. Peter completed a medical assessment of ability to do work-related physical activities. Dr. Peter concluded that Plaintiff could lift and carry 10 pounds occasionally, could stand or walk for one hour or less and could sit for less than 6 hours in an 8-hour day but he did not indicate how many hours he could sit, stand or walk. (Tr. at 208, 240.) When asked to give medical findings to support the conclusion, Dr. Peter referred to the MRIs taken of Plaintiff's spine but did not explain how they supported his specific conclusion. (*Id.*) Dr. Peter also concluded that Plaintiff was limited in upper and lower extremities but he did not describe the nature or degree of the limitation nor did he give any medical findings to support the assessment. (*Id.*)

Plaintiff was also treated by Ghada Hanna, M.D. (Tr. at 210-11.) On September 20, 2011, Plaintiff was examined by Dr. Hanna who found Plaintiff was "ambulating with normal gait pattern" and that his "[l]ower extremity strength is 5/5" but who also noted that Plaintiff "could not perform lumbar spine range of motion secondary to pain and spasm." (Tr. at 210.) Dr. Hanna continued Plaintiff's medications and recommended that Plaintiff "[c]ontinue home exercise program." (*Id.*)

9

On January 14, 2012, Dr. Hanna wrote a letter "[t]o whom it may concern" reciting the fact that Plaintiff had undergone a laminectomy and epidural steroid injections and he indicated that they "took the edge off however he still reports significant back pain radiating down into the right lower extremity." (Tr. at 238.) Dr. Hanna next stated that "currently, he is off work. He is deferring any interventional pain management at this time. he is considering a surgical opinion by Dr. Kornblum. I am still seeing him for pain medication." (*Id.*) Dr. Hanna's findings made on that same day indicated that Plaintiff could sit for ½ hour at a time and stand for ½ hour at a time, could carry 25 pounds, could not bend, stoop, push or pull but could perform all other tasks. (Tr. at 239.) Plaintiff's reflexes were all normal. (*Id.*)

At the administrative hearing, Plaintiff testified that he "wouldn't want to lift any more than five pounds[,]" that he can sit for 20-30 minutes at a time, and that he needs to alternate between sitting and standing every 20-30 minutes. (Tr. at 35.) Plaintiff indicated that he can reach and use his fingers and hands without any difficulty. (Tr. at 37.) Plaintiff stated that his wife does most of the household chores but that he can do light household duties. (Tr. at 38-39.) Plaintiff is able to drive short distances, help his child get ready for school and drive him to school, enjoy a family meal together, and watch television. (Tr. at 39-40.)     The ALJ asked the vocational expert ("VE") at the hearing to consider an individual with Plaintiff's background who:

> [could work] at the light exertional level, with occasional climbing of stairs and ramps; no climbing of ropes, ladders, and scaffolds; occasional balancing, stooping and crouching and crawling; no overhead reaching. Also, avoid concentrated exposures to unprotected heights, moving machinery, vibrating tools.

(Tr. at 48.)  The VE responded that such a person could perform the 30,000 jobs available in Southeastern Michigan, including janitor, stock worker, hand packager and inspector. (*Id.*) The ALJ asked the VE to consider the same restrictions but to limit the jobs to those at the sedentary exertional level, and the VE indicated that about 4,000 jobs would be available as a visual inspector or assembler and that 4,000

10

service-related jobs, such as ticket taker or building attendant, would also be available. (*Id.*) When asked to include a sit-stand option, the VE indicated that "almost all" of the jobs would allow for that option at the sedentary exertional level. (Tr. at 48-49.)

### F. Analysis and Conclusions

#### 1. Legal Standards

The ALJ determined that during the time Plaintiff qualified for benefits, he possessed the residual functional capacity to perform a limited range of sedentary work. (Tr. at 19-22.)

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

#### 2. Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 16.) As indicated above, if the Commissioner's decision applied the correct legal standards and is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. 42 U.S.C. § 405(g); *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff argues that "[i]t is unquestioned that I have not been engaged in substantial gainful activity since 2008" and that he has "severe documented back impairments, and

11

have had surgery as a result to attempt to improve these impairments, but despite such attempts, the impairments remain[;]" thus, he is "unable to perform this sedentary work." (Doc. 16 at 4.)

The ALJ in the instant case found that Plaintiff's back impairments were severe; however, the ALJ also found that Plaintiff possessed the RFC to perform sedentary work. I suggest that the ALJ's findings, including the RFC findings, are all supported by substantial evidence. Although Plaintiff has back pain issues, there is no evidence that such impairments are disabling.

None of Plaintiff's physicians made findings or conclusions that would be consistent with disability. (Tr. at 157, 181, 210.) Plaintiff's most recent treating physician, Dr. Hanna, On noted that Plaintiff was "ambulating with normal gait pattern[,]" that his "[l]ower extremity strength is 5/5" and recommended that Plaintiff "[c]ontinue home exercise program." (Tr. at 210.) Dr. Hanna did not opine that Plaintiff could not work but rather simply noted that Plaintiff was "off work." (Tr. at 238.)(*Id.*) Dr. Hanna's findings made on that same day indicated that Plaintiff could sit for ½ hour at a time and stand for ½ hour at a time, could carry 25 pounds, could not bend, stoop, push or pull but could perform all other tasks. (Tr. at 239.) Dr. Hanna's opinion is consistent with the ALJ's RFC findings and sedentary work parameters.

I suggest that Dr. Hanna's opinion is not undermined by Dr. Peter's medical assessment of ability to do work-related physical activities. First of all, even Dr. Peter concluded that Plaintiff could lift and carry 10 pounds occasionally, which is consistent with sedentary work. (Tr. at 208, 240.) Dr. Peter's conclusions that Plaintiff could only stand or walk for one hour or less and could sit less than 6 hours in an 8-hour day are not entitled to any deference since they address an issue reserved to the Commissioner.20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2. In addition, Dr. Peter's conclusions regarding Plaintiff's ability to sit, stand, and walk are not self-

12

evidently explained by reference to the recent spinal MRIS which show only "mild," "mild to moderate," "small" and "small to moderate" degenerative changes. (Tr. at 173, 205.) Therefore, his findings, which are inconsistent with the medical evidence of record, are not entitled to deference. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2); *Love v. Comm'r of Soc. Sec.*, 605 F. Supp.2d 893, 897-98 (W.D. Mich. 2009) (noting that opinion was internally inconsistent and was not supported by objective evidence).

In addition, the modest treatment Plaintiff received for back issues, prescription drugs and one epidural steroid injection, also supports the ALJ's findings since such modest treatment is inconsistent with a finding of disability. *See Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001 (6th Cir. 2011); *Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 334-35 (6th Cir. 2007).

### 3. Conclusion

For all these reasons, after review of the record, I suggest that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "'zone of choice' within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035 (quoting *Mullen*, 800 F.2d at 545), as the decision is supported by substantial evidence.

## III. REVIEW

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further

13

right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: October 14, 2014            /S Patricia T. Morris
                                  Patricia T. Morris
                                  United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date using the Court's CM/ECF system which delivers a copy to all counsel of record.  A hard copy was served by first class mail on William Mitcheltree, 25303 Roan Ave., Warren, MI, 48089.

Date: October 14, 2014            By       s/*Jean L. Broucek*
                                  Case Manager to Magistrate Judge Morris

14