UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM E. MITCHELTREE, SR.,

          Plaintiff,

Case No. 13-13577

v.

Paul D. Borman
United States District Judge

COMMISSIONER OF
SOCIAL SECURITY,

Patricia T. Morris
United States Magistrate Judge

          Defendant.
_____/

OPINION AND ORDER:
(1) DENYING PLAINTIFF'S OBJECTIONS (ECF NO. 22); (2) ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (ECF NO. 21); (3) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 16); AND (4) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 19)

On October 14, 2014, Magistrate Judge Patricia T. Morris issued a Report and Recommendation addressing the outstanding motions in this action. (ECF No. 21, Report and Recommendation). In the Report and Recommendation, the Magistrate Judge recommends that this Court deny Plaintiff William E. Mitcheltree, Sr.'s *pro se* motion for summary judgment. (ECF No. 16). Further, the Magistrate Judge recommends that this Court grant Defendant's motion for summary judgment. (ECF No. 19).

Now before the Court is Plaintiff's Objections to the Magistrate Judge's Report and Recommendation. (ECF No. 22). Having conducted a *de novo* review of the parts of the Magistrate Judge's Report and Recommendation to which objections have been filed pursuant to 28 U.S.C. § 636(b)(1), and for all the reasons set forth below, the Court will DENY Plaintiff's Objections, ADOPT the Magistrate Judge's Report and Recommendation, DENY Plaintiff's Motion for

Summary Judgment, and GRANT the Defendant's Motion for Summary Judgment.

## I. BACKGROUND

The Administrative Law Judge's ("ALJ") findings and the pertinent portions of the Administrative Record are accurately and adequately set forth in the Magistrate Judge's Report and Recommendation and the Court adopts them here. (ECF No. 21, Report and Recommendation at 7-11). Briefly, the Plaintiff protectively filed for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") on February 25, 2011, alleging a disability onset date of December 3, 2008, the same date he underwent a right-sided hemilaminotomy with partial discectomy. (Tr. 16, 154-55, 214-15). Plaintiff alleged disability due to constant pain in his lower back and down his legs. (Tr. 53). Plaintiff's application was denied on July 20, 2011 and he requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 51-57, 58). That hearing was held on February 9, 2012, before ALJ Timothy C. Scallen; Plaintiff was represented by counsel and a Vocational Expert ("VE") testified at the hearing. (Tr. 27-50).

On June 29, 2012, the ALJ issued a written decision finding that Plaintiff was not disabled. (Tr. 16-23). The ALJ concluded in his decision that Plaintiff suffered from the severe impairment of "lumbar radiculopathy status-post right-sided L4-5 hemilaminotomy with partial discectomy, lumbar post-laminectomy syndrome, and degenerative joint disease of the lumbar and thoracic spine with herniated nucleus pulposus at T11-12 and L5-S1". (Tr. 18). The ALJ then determined that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments because there was:

> no compromise of a nerve root or the spinal cord with evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, or motor loss (atrophy and/or weakness) accompanied by sensory or reflex loss and positive straight-leg raising (in both the sitting and supine

position), as required by Listing 1.04.

(Tr. 18). In light of the entire record, and specifically incorporating the limitations to accommodate his physical limitations and pain, the ALJ determined that the Plaintiff had the residual functioning capacity ("RFC") to perform sedentary work as defined by 20 C.F.R. § 404.1567(a) "except he is limited to occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling and should avoid all climbing of ropes, ladders, and scaffolds. He should also avoid overhead reaching and concentrated exposure to unprotected heights, moving machinery, and vibrating tools." (Tr. 19, 19-22). The ALJ concluded that Plaintiff was unable to perform any of his past relevant work, but relying upon the testimony of the VE found that a significant number of jobs existed in southeast Michigan that Plaintiff was capable of performing, namely as a sorter, visual inspector, and assembler. (Tr. 22-23). Therefore, the ALJ determined that Plaintiff was not disabled. (Tr. 23).

Plaintiff appealed the ALJ's decision. On July 9, 2013, the Appeals Council denied his request for review, and the ALJ's decision became the agency's final decision. (Tr. 1-4).

Thereafter, on August 20, 2013, Plaintiff filed his *pro se* complaint in this Court seeking judicial review of the Defendant Commissioner's decision. (ECF No. 1). The parties filed cross motions for summary judgment which were ultimately referred for decision to Magistrate Judge Morris. (ECF Nos. 16 & 19). Plaintiff also filed a response to the Defendant Commissioner's motion for summary judgment. (ECF No. 20). On October 27, 2014, the Magistrate Judge issued a Report and Recommendation which recommended denying Plaintiff's motion for summary judgment and granting Defendant's motion for summary judgment. (ECF No. 21). The Magistrate Judge found that there was substantial evidence in the record to support the ALJ's finding that

Plaintiff remains capable of performing a significant number of jobs in the economy. (*Id.*). Thereafter, Plaintiff filed his Objections to the Report and Recommendation. (ECF No. 22).

## II. STANDARD OF REVIEW

Where a party has objected to portions of a Magistrate Judge's Report and Recommendation, the Court conducts a *de novo* review of those portions. FED. R. CIV. P. 72(b); *Lyons v. Comm'r of Soc. Sec.*, 351 F. Supp. 2d 659, 661 (E.D. Mich. 2004). In reviewing the findings of the ALJ, the Court is limited to determining whether those findings are supported by substantial evidence and made pursuant to proper legal standards. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citing 42 U.S.C. § 405(h)); *see also Cutlip v. Sec't of Health and Human Servs.*, 25 F.3d 284, 286 (1994) ("Judicial review of the Secretary's decisions is limited to determining whether the Secretary's findings are supported by substantial evidence and whether the Secretary employed the proper legal standards."). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (quoting *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009)); *see also McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008) (recognizing that substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotations omitted). "If the Commissioner's decision is supported by substantial evidence, we must defer to that decision, 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (quoting *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005)).

This Court does not "try the case de novo, nor resolve conflicts in the evidence, nor decide

questions of credibility." *Cutlip*, 25 F.3d at 286. Indeed, "[i]t is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers*, 486 F.3d at 247; *see Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (providing that the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (citation omitted)).

### III. ANALYSIS

Plaintiff has set forth four enumerated objections to the Magistrate Judge's Report and Recommendation. The Court will address each in turn. Additionally, the Court is aware that Plaintiff is proceeding *pro se* and therefore construes his pleadings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).

A.      Evidence supporting Disabling Impairments

Plaintiff objects to the Magistrate Judge's conclusion that the there was "no evidence" in the record to support the conclusion that Plaintiff's impairments were disabling. (ECF No. 21 at 12). Plaintiff contends that the statement is not accurate and also not supported by the Administrative Record. (Obj. at 2).

The Court notes that Plaintiff misapprehends the Magistrate Judge and the ALJ's determination there was no medical evidence supporting a conclusion that Plaintiff's back and leg pain was debilitating. This determination does not indicate that Plaintiff is without pain or that Plaintiff is without limitations on his abilities. In fact, Plaintiff's physical limitations were acknowledged by the ALJ in assessing Plaintiff's residual functional capacity (or "RFC") and reflected the additional limitations ascribed to Plaintiff beyond sedentary work: only occasional

climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling and should avoid all climbing of ropes, ladders, and scaffolds; avoidance of overhead reaching and concentrated exposure to unprotected heights, moving machinery, and vibrating tools. (*See* Tr. 20, "Therefore it is determined that while the claimant's back problems do impact his ability to perform some work, their severity would not prevent the performance of work within the above-determined residual functional capacity.").

Morever, the ALJ's conclusion that there was not evidence to support a disabling impairment does not mean that Plaintiff failed to present a record which established that he continued to suffer pain after his back surgery. Rather, the ALJ concluded that Plaintiff's subjective complaints of back pain were not credible and not supported by the medical evidence. (Tr. 20, finding that Plaintiff's statement to doctor that he could "live with the symptoms" suggested "that the claimant's allegations regarding the severity of his pain may not be entirely credible."); *see Walters v. Comm'r of Soc. Sec.*, 127 F. 3d 525, 531 (6th Cir. 1997) ("In evaluating complaints of pain, an ALJ may properly consider the credibility of the claimant.") (citation omitted).

More specifically, the ALJ found that the Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence, and limited effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 19); *accord* 20 C.F.R. §§ 404.1529; 416.929(a); *see also* SSR 96-7p, 1996 WL 374186. It is well settled that "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may

not be disregarded solely because they are not substantiated by objective medical evidence." SSR 96-7p, 1996 WL 374186, at *1.  However, "[d]iscounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence."  *Walters*, 127 F.3d at 531 (citation omitted).

In the instant case, the ALJ properly followed the regulations in evaluating Plaintiff's subjective complaints of back pain and determined that Plaintiff's claims were not credible.  The ALJ noted in his analysis of Plaintiff's subjective complaints of pain that Plaintiff had not stopped working due to his alleged impairments, but instead because his job had been outsourced to Mexico. (Tr. 21, 171).  Plaintiff also collected unemployment benefits for a year which, in Michigan, requires that a claimant aver he is capable of work. (*Id*.).  The ALJ concluded from those facts that "he retained the ability to perform at least the limited range of sedentary work" with the additional limitations set forth in the RFC. (Tr. 21).  The ALJ also found it significant that Plaintiff had reported back pain for some ten years (many years prior to having his surgery but while continuing to work) and that Plaintiff had declined further surgery from Dr. Kornblum, stating that he could "live with the symptoms". (Tr. 20, 171).  These facts indicated to the ALJ that his pain was not as severe as he alleged. (*Id*.).  Additionally, the ALJ noted that while Plaintiff had testified as to limited daily activities these limitations were undermined by the medical evidence. (Tr. 21).  In fact, Plaintiff's testimony that he could only lift 5 pounds was not supported by even the most restrictive medical source statements authored by Dr. Ghada Hanna who opined he could lift 10 pounds occasionally. (Tr. 208).

The Court notes that an ALJ's findings based on the credibility of a Plaintiff are given great weight and deference.  *Cruse*, 502 F.3d at 542 (citation omitted).  Here, there is substantial

evidence in the record to support the ALJ's findings. Further, where the ALJ's decision is supported by substantial evidence, a court must defer to that decision, even when there is "substantial evidence in the record that would have supported an opposite conclusion.'" *Colvin*, 475 F.3d at 730 (citation omitted). Therefore, the Court finds Plaintiff's objection is without merit.

B.   Physician's Findings

Plaintiff next objects to the Magistrate Judge's conclusion that none of Plaintiff's physicians "made findings or conclusions that would be consistent with disability." (ECF No. 21, at 12). Plaintiff again argues that this statement is not accurate and not supported by the administrative record and appears to assert that the Magistrate Judge and the ALJ erroneously discounted the opinion of two of his treating physicians, Drs. Jason Peter and Ghada Hanna. (ECF No. 23, at 2).

An opinion of a limitation or disability given by a treating source is entitled to deference and "[i]f the opinion of the claimant's treating physician is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record, it must be given controlling weight." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009) (internal quotation marks omitted) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). The regulations provide that an ALJ will give controlling weight to a treating source's opinion under the treating-physician rule only if it is both well supported by medically acceptable data and it is consistent with other substantial evidence. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013); *see* 20 C.F.R. § 404.1527(c)(2).

However, when an ALJ determines that a treating physician's opinion is not entitled to "controlling weight" the inquiry does not stop. "[I]n all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (citing SSR 96-2p (1996), 1996 WL 374188, at *4). "[T]he Commissioner imposes on its decision makers a clear duty to "always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). When controlling weight is not accorded to a treating-source opinion, "then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, as well as the treating source's area of speciality and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence". *Gayheart*, 710 F.3d at 376 (internal citations omitted). Those "good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Cole*, 661 F.3d at 937 (quoting SSR 96-2p (1996), 1996 WL 374188, at *5); *see also Gayheart*, 710 F.3d at 376 (citing same). However, an ALJ need not set forth an exhaustive "factor-by-factor" analysis as long as the ALJ gives "good reasons" for the weight assigned to the treating source's opinion. *Francis v. Comm'r of Soc. Sec*., 414 F. App'x 802, 805 (6th Cir. 2011).

In the instant case, the ALJ found Dr. Peter's letter in which he opines that Plaintiff meets the criteria of Listing of 1.04 was not persuasive. (Tr. 20-21, 198). The ALJ noted that the statement by Dr. Peter was not supported by his own medical findings. (Tr. 20-21).

9

Moreover, the ALJ noted that the context in which this statement was made undermined its persuasiveness because the Plaintiff's attorney admitted during the hearing that he had "requested that Dr. Peter provide an opinion regarding whether the claimant met the listing in an effort to generate evidence for the current appeal." (Tr. 20-21). An ALJ is not obligated to give weight to a treating physician's opinion when his or her treatment notes do not support such severe limitations. *See Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 663, 666-67 (6th Cir. 2004).

The ALJ also found that Dr. Hanna's medical source statement should be given "no weight". Dr. Hanna's June 2011 medical source statement provided that Plaintiff could walk with a normal gait, he could only occasionally kneel, balance, and climb but never crouch or stoop. (Tr. 238-42). Dr. Hanna also opined that Plaintiff should not be exposed to vibration, moving machinery, heights, poor ventilation, chemical (unspecified), temperature extremes, wetness, dust, noise, fumes, odors, or gases. (Tr. 209, 241). Dr. Hanna's statement further provided that Plaintiff had undefined limitations on his reaching, handling, fingering, feeling, seeing, and hearing. (*Id.*). The ALJ noted that there was "simply no evidence that the claimant has any limitations in his upper extremities or that he would have difficulty feeling, seeing, or hearing. This suggests that Dr. Hanna was arbitrarily checking off boxes without concern for the claimant's physical limitations." (Tr. 21). Indeed, those findings were contradicted by Plaintiff's own testimony that he had no difficulty using his fingers and hands. (Tr. 37).

Moreover, Dr. Hanna had failed to provide any substantive basis or reference to any medical findings to support her opinion - even the limitations regarding Plaintiff's ability to lift, carry, stand, walk or sit. (*Id.*). The ALJ reasonably found that this indicated that Dr. Hanna had

"relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true, most, if not all, of what the claimant reported." (*Id.*).

Given this analysis, the Court concludes that the ALJ properly analyzed the opinions of the treating physicians and set forth good reasons that were supported by substantial evidence for discounting Drs. Peter and Hanna's statements. Accordingly, the Court denies Plaintiff's objection based on claims of error related to the ALJ's or the Magistrate Judge's analysis of the treating physicians' opinions.

C.  Objection to Magistrate Judge's Reliance on the VE's Testimony

Plaintiff appears to object to both the Magistrate Judge's and the ALJ's reliance upon the VE's testimony. Plaintiff alleges that the VE testified that "some, extremely limited, part-time, sedentary work could be performed" but that the VE also found that being off task for more than 15% of the time as a result of medications would be work preclusive. (*See* ECF No. 23, at 2). Plaintiff claims that because the VE testimony indicated that Plaintiff could not perform any job, the Magistrate Judge's and the ALJ's conclusion to the contrary is "inherently contradictory". (*Id.*).

The Court notes that during the hearing, the ALJ posed various hypotheticals to the VE to determine whether there existed any jobs in the economy for an individual of Plaintiff's age, education, work history, and subject to the same residual functional capacity. (Tr. 19, 22-23). The VE testified that considering all of those factors that such an individual would be able to "perform the requirements of representative occupations such as a sorter, visual inspector, and assembler, with 4000 such jobs in southeast Michigan, and ticket taker and building attendant,

with 4000 such jobs in southeast Michigan." (Tr. 23, 48-49). The Court notes that Plaintiff's description of this proposed sedentary work with additional restrictions as "part-time" is not supported by the record.

The ALJ also posed a question to the VE regarding what is "typically allowed, in terms of percentage of the time of a normal eight-hour workday, in terms of being off task?" (Tr. 49). The VE responded that a person can be off task no more than 15% of a workday. (*Id*.). The ALJ then clarified that if a person were "off task for more than that due to the effect of medication, as well as resting due to the intensity of pain ... that would be job preclusive?". (*Id.*). The VE agreed, that yes that being off task for more than 15% of a day would be job preclusive. (*Id*.). Plaintiff contends that the VE's testimony on this issue renders the Magistrate Judge's and the ALJ's conclusion that he could perform sedentary work with additional limitations "inherently contradictory." (ECF No. 23, at 2).

However, it is clear from the record that while the ALJ did ask the VE whether a person who was off task for more than 15% of the day would be precluded from work, the ALJ did not rely upon the VE's answer in determining Plaintiff's ability to find a job in southeast Michigan. (*See* Tr. 22-23). Rather, as provided in the ALJ's decision and examined more in detail previously, the ALJ did not find Plaintiff's testimony regarding his subjective complaints of pain and daily activities to be credible. Additionally, there does not appear to be any evidence in the medical record supporting Plaintiff's allegations regarding medical side effects or his need to lay down for large periods of time during the day.

The ALJ did, however, properly rely upon the VE's testimony in determining that Plaintiff could not perform his past relevant work because the requirements of those jobs

12

exceeded his residual functional capacity. (Tr. 22). The ALJ also reasonably relied upon the VE's testimony in determining that numerous jobs existed in the economy that Plaintiff could perform. (Tr. 19, 22-23). *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (holding "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question".); *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010) ("In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments.").

Therefore, to the extent that Plaintiff argues that the Magistrate Judge or the ALJ erred in relying upon the VE's testimony, such an objection is without merit.

D. <u>Modest Treatment</u>

Plaintiff next objects to the Magistrate Judge's finding that his treatment was "modest" and was "inconsistent with a finding of disability." (ECF No. 23, at 3). More specifically, Plaintiff appears to argue that the Magistrate Judge erred when she stated that he had only undergone a single epidural steroid injection when in fact he had received three such injections after his surgery from Dr. Peter (Tr. 185, 186, 87) and three injections from Dr. Robert Blumberg prior to his surgery (Tr. 227-236).

The Court notes that while the Magistrate Judge did misstate the record in her analysis where she provided that Plaintiff had only received one injection, the Magistrate Judge did properly note in her recitation of the administrative record that Plaintiff had, in fact, received six injections. (*See* R&R, ECF No. 21, at 8). The Court finds such a misstatement is merely a

mistype and the error did not affect the Magistrate Judge's ultimate determination that there was substantial evidence to support the ALJ's decision. Indeed, it is clear that the Magistrate Judge as well as the ALJ properly and accurately set forth Plaintiff's medical history. (ECF No. 21, at 7-11). Moreover, the ALJ acknowledged that Plaintiff had received steroid injections and attempted a spinal cord stimulator. (Tr. 20). The ALJ went on to weigh those interventions against the fact that Plaintiff had aggravated his symptoms prior to receiving the injections from Dr. Peter. (Tr. 20, 191, 185, 186, 187). Additionally, the ALJ noted that Plaintiff reported that he had "significant relief" of his pain with the use of Vicodin. (Tr. 20, 191).

In summary, because the Magistrate Judge's misstatement regarding Plaintiff's treatment did not affect her ultimate determination that the ALJ's decision was supported by substantial evidence the Court will deny Plaintiff's objection based on the same.

## IV. CONCLUSION

For all the reasons set forth above, the Court DENIES Plaintiff's Objections (ECF No. 22); ADOPTS the Report and Recommendation (ECF No. 21); DENIES Plaintiff's Motion for Summary Judgment (ECF No. 16); and GRANTS Defendant's Motion for Summary Judgment (ECF No. 19).

IT IS SO ORDERED.

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: July 8, 2015

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 8, 2015.

                                          s/Deborah Tofil
                                          Case Manager